UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JS-6

CIVIL MINUTES - GENERAL

| | |
|---|---|
| Case No.: CV 16-01865-AB (Ex) | Date: April 26, 2016 |
| Title: *Alexis Olguin v. International Paper Company et al.* | |

| | |
|---|---|
| Present: The Honorable | ANDRÉ BIROTTE JR. |

| Carla Badirian | N/A |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Appearing | None Appearing |

**Proceedings:** [In Chambers] ORDER GRANTING Plaintiff's Motion to Remand (Dkt. No. 12)

    Plaintiff Alexis Olguin filed this action on December 23, 2015 in the Superior Court of California, County of Los Angeles against Defendants International Paper Company ("IPC"), International Paper ("IP"), and Orlando Contreras ("Contreras") ("Defendants"). Not. of Removal ¶ 1 and Ex. A, Dkt. No. 1. Plaintiff served IPC on February 19, 2016. *Id.* at ¶ 4. Defendants then timely filed a Notice of Removal on March 18, 2016 asserting this Court's diversity jurisdiction under 28 U.S.C. § 1332. *Id.* at ¶ 5.

    Before the Court is Plaintiff's Motion ("Motion") filed March 28, 2016 seeking to remand this action on the grounds that Defendants have failed to establish complete diversity among the parties. Dkt. No. 12. Defendants timely filed their Opposition on April 4, 2016, and Plaintiff timely filed his Reply on April 11, 2016. Dkt. Nos. 13-14. The Court found this matter appropriate for determination without oral argument and vacated the hearing previously scheduled for April 25, 2016. Dkt. No. 15; *see* Fed. R. Civ. Proc. 78(b); Cal. C.D. L.R. 7-15. Having considered the materials submitted by the parties, and for the reasons indicated below, the Court **GRANTS** Plaintiff's Motion.

## I. BACKGROUND

Plaintiff's Complaint alleges eight causes of action under California state law arising from his employment with IPC as a "stacker" beginning in August 2011.  Ex. A to Not. of Removal ("Compl.") ¶ 13, Dkt. No. 1-1.  As averred in the Complaint, in January 2013, Plaintiff gave Defendants notice that he was suffering from a serious asthma condition for which he was hospitalized that same month.  *Id.* at ¶ 14.  Though Plaintiff had the right to take intermittent leave under the federal Family Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA") for his asthma condition throughout 2013, Defendants did not inform Plaintiff of this right until November 2013.  *Id.* at ¶¶ 15-16.  Upon receiving this information, Plaintiff filed paperwork to secure 1-3 absences per month between November 18, 2013 and December 18, 2014 to accommodate his asthma flare-ups.  *Id.* at ¶ 17.

Between December 2013 and January 20, 2014, Plaintiff was absent from work seven times due to his asthma condition.  *Id.* at ¶ 18.  Nevertheless, Plaintiff's supervisor Orlando Contreras inaccurately reported the reasons for Plaintiff's absences as unrelated to the FMLA/CFRA.  *Id.* at ¶¶ 19-20.  And as a result, Plaintiff was suspended for "excessive absences" in the middle of January 2014 and was terminated on January 23, 2014 for violating Defendants' attendance policy.  *Id.*  Plaintiff alleges that "[a]lthough Defendants were on notice that Plaintiff had a serious medical condition for which he required intermittent FMLA/CFRA leave[,] Defendants mischaracterized the stated reasons for Plaintiff's absences as not relating to his serious medical condition/disability."  *Id.* at ¶ 20.

Based on these actions, Plaintiff alleges that Defendant IPC is liable under the California Fair Employment and Housing Act ("FEHA") for disability discrimination (Claim 1), failure to provide reasonable accommodation (Claim 2), failure to engage in the interactive process (Claim 3), and retaliation (Claim 4); liable under the CFRA for failure to provide leave (Claim 5) and retaliation (Claim 6); liable for wrongful termination in violation of public policy (Claim 7); and liable for intentional infliction of emotional distress ("IIED") (Claim 8).  Plaintiff alleges only his eighth claim for IIED against Defendants IP and Contreras.

Defendant IPC removed this action on March 18, 2016 on the basis of diversity jurisdiction.  Not. of Removal ¶ 5.  IPC avers that the parties are completely diverse in this action because Plaintiff is a citizen of California and Defendant IPC is a citizen of New York and Tennessee.  *Id.*  According to IPC, Defendants IP and Contreras are named as "sham" defendants only because IP does not exist and Plaintiff's single claim for IIED against Contreras is barred as a matter of law.  *Id.* at ¶¶ 5-14.

Plaintiff now moves to remand this action on the grounds that, contrary to Defendant's removal allegations, Defendant Contreras is not a sham defendant and this Court thus lacks subject matter jurisdiction because the parties are not completely diverse. Mot. at 4 ("The relevant Defendant to this motion – i.e., the Defendant whose presence destroys complete diversity – is individual, local Defendant Orlando Contreras. The relevant claims, which permit naming this non-diverse individual Defendant is Plaintiff's claim for intentional infliction of emotional distress."). Blaming "scrivener's error," Plaintiff argues that he intended to allege all eight claims against both IPC and IP, thus demonstrating that IP was not named as a sham defendant. Mot. at 7-8. But other than this side note, the crux of Plaintiff's Motion is that his claim against Contreras is not barred as a matter of law and that this claim alone is sufficient to defeat diversity jurisdiction. Mot. at 5 ("[T]he Court must consider the residency of defendant Contreras, and since he is a resident of the State of California, complete diversity does not exist.").

## II.  LEGAL STANDARD

### A.  Removal

Under 28 U.S.C. § 1441(a) ("Section 1441"), a civil action may be removed to the district court where the action is pending if the district court has original jurisdiction over the action. Under 28 U.S.C. § 1332 ("Section 1332"), a district court has original jurisdiction of a civil action where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between "citizens of different states." Section 1332(a)(1) requires complete diversity, *i.e.*, that "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996). Section 1441(b)(2) further limits removal to cases where no defendant "properly joined and served . . . is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b)(2). Removal statutes are "strictly construe[d] against removal." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id*. Accordingly, the removing party bears a heavy burden of establishing original jurisdiction in the district court. *See id*.

### B.  Fraudulent Joinder

A non-diverse party may be disregarded for purposes of determining whether jurisdiction exists if the court determines that the party's joinder was "fraudulent" or a "sham." *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001); *Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987). The term "fraudulent joinder" is a term of art and does not imply any intent to deceive on the part of a plaintiff or his counsel. *Lewis v. Time Inc.*, 83 F.R.D. 455, 460 (E.D. Cal. 1979) *aff'd* 710 F.2d 549 (9th Cir. 1983) *impliedly overruled on other grounds in Milkovich v. Lorain Journal Co.,* 497 U.S. 1 (1990). The

relevant inquiry is whether the plaintiff has failed to state a cause of action against the non-diverse defendant, and the failure is "obvious according to the settled rules of the state." *McCabe*, 811 F.2d at 1339 (emphasis added); *see also Morris*, 236 F.3d at 1067. Moreover, "[b]ecause the court must resolve all doubts against removal, we employ a presumption against fraudulent joinder." *Macey*, 220 F. Supp. 2d at 1117-18 (citing *Gaus*, 980 F.2d at 566). Thus, "the court must resolve all material ambiguities in state law in plaintiff's favor," and "[w]hen there are real ambiguities among the relevant state law authorities, federal courts that are considering motions to remand should avoid purporting to decide how state courts would construe those authorities." *Id.*; *accord Briano v. Conseco Life Ins. Co.*, 126 F. Supp. 2d 1293, 1297 (C.D. Cal. 2000).

Finally, the burden of proving fraudulent joinder is a heavy one. The removing party must prove that there is "no possibility that plaintiff will be able to establish a cause of action in State court against the alleged sham defendant." *Good v. Prudential Ins. Co. of America*, 5 F. Supp. 2d 804, 807 (N.D. Cal. 1998). In this regard, "[r]emand must be granted unless the defendant shows that the plaintiff 'would not be afforded leave to amend his complaint to cure [the] purported deficiency.'" *Padilla v. AT & T Corp.*, 697 F. Supp. 2d 1156, 1159 (C.D. Cal. 2009) (brackets in original); *Macey v. Allstate Prop. & Cas. Ins. Co.*, 220 F. Supp. 2d 1116, 1117 (N.D. Cal. 2002) ("If there is a non-fanciful possibility that plaintiff can state a claim under California law against the non-diverse defendants the court must remand."). "Merely a 'glimmer of hope' that plaintiff can establish [a] claim is sufficient to preclude application of [the] fraudulent joinder doctrine." *Gonzalez v. J.S. Paluch Co.*, No. 12-08696-DDP (FMOx), 2013 WL 100210, at *4 (C.D. Cal. Jan. 7, 2013) (internal quotations omitted) (brackets in original).

### III. DISCUSSION

As noted above, Plaintiff argues that remand is appropriate based solely on his IIED claim against Defendant Contreras. Mot. at 4-5. Accordingly, the Court will address only this claim and ignore the citizenship of Defendant IP for purposes of this Motion. Upon considering Plaintiff's claim against Contreras, however, the Court concludes that Plaintiff's claim against him is not barred as a matter of law and thus his citizenship may not be disregarded.

To state a claim for IIED, a plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Wilson v. Hynek*, 207 Cal. App. 4th 999, 1009 (2012). The outrageous conduct alleged "must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.*

Citing *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996), IPC argues that California law is "well-settled" that a plaintiff cannot assert an IIED claim against his supervisor based solely on "personnel management activity" even if such activity was "improperly motivated." Opp. at 1. In *Janken*, the court considered among other issues whether the plaintiffs' allegations that the defendant supervisors downgraded plaintiffs' performance evaluations, failed to delegate tasks, capped salaries, and demoted or terminated plaintiffs could constitute grounds for an IIED claim. 46 Cal. App. 4th at 79-80. The court held that the plaintiffs' IIED claim failed, reasoning:

> Managing personnel is not outrageous conduct beyond the bounds of human decency, but rather conduct essential to the welfare and prosperity of society. A simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, even if improper motivation is alleged. If personnel management decisions are improperly motivated, the remedy is a suit against the employer for discrimination.

*Id*. IPC argues the same holding should apply here. Opp. at 5. Plaintiff's sole allegation in support of his IIED claim against Contreras is that he mischaracterized Plaintiff's absences as unrelated to Plaintiff's medical condition, which was then used to terminate Plaintiff's employment. IPC thus contends that, even if improperly motivated, Contreras's actions fell within the scope of his managerial duties and, under *Janken*, cannot serve as a basis for an IIED claim. Opp. at 4-5.

Contrary to Defendants' interpretation, however, *Janken* did not hold that, as a matter of law, an IIED claim cannot be based on managerial activity.[1] *See Graves v. Johnson Control World Servs., Inc.*, No. C-05-1772 SC, 2006 WL 618796, at *11 (N.D. Cal. Mar. 13, 2006), *aff'd sub nom. Graves v. Johnson Controls World Servs., Inc.*, 271 F. App'x 598 (9th Cir. 2008) (holding that the defendant "overstates the reach of the Court's decision in *Janken* to the extent that it argues that *any* decision affecting personnel management is not actionable under an intentional infliction of emotional distress theory, no matter what the motivation."). Rather, "courts ordinarily find IIED claims based on workplace harassment or discrimination viable even where asserted against individual employees." *Martinez v. Michaels Stores, Inc.*, Case No. 15-02104, 2015 U.S. Dist. LEXIS 92180, at *26-29 (C.D. Cal. July 15, 2015) (collecting cases); *see, e.g., Chavez v. Amerigas Propane, Inc.*, No. CV 12-07524, 2013 WL 25882, *7 (C.D. Cal. Jan. 2, 2013) (finding that a supervisor was not fraudulently joined where plaintiff alleged that the

---

[1] Notably, though discussed at length by the parties, the case of *Reno v. Baird*, 18 Cal.4th 640, 643 (1998) is irrelevant to this point. *Reno* cited *Janken* only in support of its holding that individual supervisors could not be held liable for discrimination under the FEHA. *See* 18 Cal. 4th at 663. Thus, *Reno*'s viability is immaterial because the question here is whether Plaintiff may bring a claim for IIED based on managerial conduct, not whether Plaintiff may bring a claim of discrimination against an individual supervisor under the FEHA.

supervisor forced plaintiff to undergo an unnecessarily strenuous and dangerous physical test with knowledge of plaintiff's prior leg injury and did not subject other employees to the same test); *Barsell v. Urban Outfitters, Inc.*, No. 09-2604, 2009 WL 1916495, *4 (C.D. Cal. July 1, 2009) (holding there was a "non-fanciful possibility" that plaintiff could state a claim for IIED against her supervisor where plaintiff alleged that supervisor had falsified a report about plaintiff's work history and retaliated against plaintiff based on that report); *see also Rojo v. Kliger*, 52 Cal.3d 65, 81 (1990) (stating that an "employer's discriminatory actions may constitute . . . outrageous conduct under a theory of intentional infliction of emotional distress").

The test for such claims is whether "the behavior goes beyond the act of termination" or some other managerial decision. *Dagley v. Target Corp., Inc.*, CV 09-1330, 2009 WL 910558, at *3 (C.D. Cal. Mar. 31, 2009) (quoting *Gibson v. Am. Airlines*, No. C 96-1444, 1996 WL 329632, at *4 (N.D. Cal. June 6, 1996)). "For example, if a plaintiff 'alleges conduct other than that inherent in terminating an employee', such as violating a 'fundamental interest of the employee . . . in a deceptive manner that results in the plaintiff being denied rights granted to other employees,'" then the plaintiff may plausibly assert an IIED claim against the supervisor responsible for the conduct. *Id.* This logic applies even in cases such as this, where the underlying decision was no more than a termination in the context of medical leave:

> In *Gibson*, the court found that such a claim was possible against plaintiff's supervisor when the supervisor fired plaintiff in part for taking medical leave. The *Gibson* court stated that plaintiff was denied the right to medical leave in a deceptive manner when other employees were given such a right. In this case, Plaintiff alleges that she was terminated during her medical leave without any inquiry or warning from Ms. Hernandez. It is possible that a reasonable jury could find that Ms. Hernandez denied Plaintiff's right to medical leave in a deceptive manner by terminating her, and that therefore Plaintiff may possibly have a claim of intentional infliction of emotional distress against Ms. Hernandez. Ms. Hernandez therefore is not a sham defendant.

*Id.* (citing *Gibson*, 1996 WL 329632, at *4).

Much like the plaintiffs in *Gibson* and *Dagley*, Plaintiff alleges here that Contreras misreported the nature of Plaintiff's absences and thus denied Plaintiff his rights under the FMLA and CFRA. And though Plaintiff's complaint lacks detail concerning Contreras's intent and knowledge of Plaintiff's susceptibility to emotional distress, as illustrated in *Dagley* and *Gibson*, there is a "non-fanciful possibility" that Plaintiff will be able to allege

a claim of IIED against Contreras for his conduct because Plaintiff has alleged that Contreras deceptively denied him a right given to other employees. *See* Compl. ¶¶ 19-20.

IPC argues that *Dagley* and similar cases are distinguishable because Plaintiff in this case has not alleged sufficient facts to show Contreras acted beyond his necessary managerial duties or that he knew or should have known Plaintiff was susceptible to emotional distress. Opp. at 2-3 (citing *Kobos v. Schwan's Home Serv., Inc.*, No. 1:09CV0856 LJO DLB, 2009 WL 2425399, at *4 (E.D. Cal. Aug. 7, 2009)). But this is not the test the Court applies in determining whether a defendant has been fraudulently joined.[2] Rather, even if Plaintiff has failed to allege sufficient facts, the Court considers whether, under California law, Plaintiff would be given leave to amend to allege sufficient facts in support of his IIED claim. *See, e.g., Morales v. Gruma Corp.,* No. CV 13-7341, 2013 WL 6018040, at *5 (C.D. Cal. Nov. 12, 2013) (granting motion to remand where "to the extent that the allegations in the complaint might be insufficient to state a claim for defamation in state court, it is possible that such deficiencies could be cured by amendment.") (citing *Padilla*, 697 F.Supp.2d at 1159 (granting motion to remand when defendant failed to show that the plaintiff would not be granted leave to amend his complaint to cure the asserted deficiency) and *Barsell v. Urban Outfitters, Inc.*, 2009 WL 1916495, at *3 (C.D. Cal. July 1, 2009) (same) and distinguishing *Kruso v. International Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 n.12 (9th Cir. 1989) (holding defendants were fraudulently joined where plaintiffs could not have stated a claim under any facts of the case)).

Here, IPC has offered no reason why Plaintiff would not be given leave to amend to add additional facts in support of his claim against Contreras, and the Court finds there is at least a possibility that Plaintiff will be able to allege sufficient facts in support of that claim. As a result, the Court cannot disregard Contreras's citizenship in determining whether diversity jurisdiction exists. And because both Plaintiff and Contreras are California citizens, complete diversity of citizenship is lacking and the Court is deprived of

---

[2] District courts in California disagree as to whether the Court should consider whether the deficiencies in a claim may be cured by amendment in state court. *Compare, e.g, Toth v. Guardian Indus. Corp.,* No. 1:12CV0001, 2012 WL 468244, at *5 (E.D. Cal. Feb. 13, 2012) *and Roland–Warren v. Sunrise Senior Living,* CV 09-1199, 2009 WL 2406356, at *8 (S.D.Cal. Aug.4, 2009) (refusing to consider whether plaintiff could correct deficiencies with amended complaint in state court) *with Morales v. Gruma Corp.,* No. CV 13-7341, 2013 WL 6018040, at *6 (C.D. Cal. Nov. 12, 2013) *and Umamoto v. Insphere Ins. Sols., Inc.*, No. 13-CV-0475-LHK, 2013 WL 2084475, at *5 (N.D. Cal. May 14, 2013) (holding remand appropriate if plaintiff can amend to cure deficiencies). But in light of the "heavy burden" imposed by the fraudulent joinder standard, the Court finds the line of cases considering possible amendment to be more persuasive. *See, e.g., Martinez,* 2015 U.S. Dist. LEXIS 92180, at *30-32 (holding same and collecting cases).

subject matter jurisdiction. The Court **GRANTS** Plaintiff's Motion and directs the Clerk to **REMAND** this action to the Superior Court of California, County of Los Angeles.

**IT IS SO ORDERED.**